UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANDREW MATHEWS,**<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>**CITY OF LIVONIA,** *et al.***,**<br><br>　　　　　Defendants. | **2:21-CV-10361-TGB-EAS**<br><br>**ORDER DENYING DEFENDANT TAMER'S MOTION FOR RECONSIDERATION**<br><br>**(ECF NO. 22)** |

　　　Livonia Police Officer Sam Tamer, the Defendant in this matter, has moved for reconsideration of this Court's September 29, 2022 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. (ECF No. 22.) For the reasons explained below, the motion will be **DENIED**.

**I.　Background**

　　　Andrew Mathews sustained facial injuries requiring medical attention after an encounter with Livonia police took a turn: during a stop for jaywalking, officers learned that he had an active arrest warrant and, when he tried to flee, they pursued and tackled him. Portions the pursuit and arrest were recorded by officers' body cameras.

　　　Following the incident, Mathews sued two of the officers involved, Officer Faris Alhajar and Officer Sam Tamer. He asserted that the initial stop by Alhajar lacked legal justification and that, after tackling him,

1

Tamer violated his right to be free from excessive force by striking him twice in the face with a closed fist. *See* 42 U.S.C. § 1983.

At the close of discovery, Officers Alhajar and Tamer moved for summary judgment. (ECF No. 12.) Alhajar asserted that the stop was justified because he had personally observed Andrews commit two traffic infractions. Tamer, meanwhile, argued that body camera footage showed clearly that he used no more than reasonable force to detain a suspect who was actively resisting detention.

The Court agreed that Officer Alhajar was entitled to summary judgment on the unlawful seizure claim, but it declined to enter summary judgment for Officer Tamer on the excessive force claim. (ECF No. 21.) The parties disputed what happened after Mathews was tackled. According to Officer Tamer, after being taken down, Mathews continued to struggle and hit him in the face, which was the reason that Officer Tamer delivered the strikes; Mathews, meanwhile, said he immediately threw his hands up in surrender. After reviewing available body camera footage, the Court concluded that it did not clearly confirm or discredit either account. In the Court's view, the footage did not clearly reveal which version was correct, so a material factual issue remained for a jury. On the same basis, the Court also denied Officer Tamer's claim for qualified immunity.

Officer Tamer now asks the Court to reconsider that decision.

## II. Legal Standard

In this District, motions to reconsider non-final orders must be filed within 14 days of the order challenged and may only be brought only on the following grounds:

> (a) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
> (b) An intervening change in controlling law warrants a different outcome; or
> (c) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

L.R. 7.1(h)(2). Responses to such motions are not permitted unless the Court orders otherwise. L.R. 7.1(h)(3).

## III. Analysis

As an initial matter, Officer Tamer's motion appears to be untimely. The order he challenges was entered on September 29, 2022, and he did not file his motion until October 14, 2022—15 days later. The Court could deny the motion on this basis alone, as there is no acknowledgement of or explanation for this delay, but it will nonetheless address the merits.

According to Officer Tamer, the Court made two mistakes in the summary judgment order warranting reversal.

First, Officer Tamer challenges the Court's conclusion that body camera footage of the takedown was not clear enough to determine whether the use of force was reasonable. (ECF No. 22, PageID.619-24.)

3

Urging that the videos "demonstrate[] clearly" that Mathews continued to resist detention efforts until other officers arrived to assist, he offers a second-by-second interpretation of the events recorded by his and Officer Alhajar's body cameras. (*Id.* at PageID.619-20.)

Officer Tamer is correct that if the videos clearly showed that Mathews was resisting, and that he struck Tamer, blatantly contradicting Mathews' version of the events, the Court would have entered summary judgment in Officer Tamer's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). But they do not. While Officer Tamer's play-by-play presents a plausible interpretation, it is equally possible that a reasonable juror viewing the same videos could conclude they show that Mathews clearly surrendered on being taken to the ground, or that Officer Tamer reasonably believed Mathews was continuing to resist even though he was trying to surrender. Because the videos themselves are not conclusive, they do not support summary judgment—a jury will need to determine what they show in light of the surrounding evidence, including the testimony of other witnesses who participated in the event.

Second, Officer Tamer asserts that the Court misapprehended his qualified immunity claim. (ECF No. 22, PageID.624-25.) Relying on his interpretation of the body camera footage, he renews his argument that, under the circumstances, an officer could have reasonably but mistakenly believed that Mathews was struggling and resisting police commands.

4

The problem is that the video does not show clearly what the circumstances were. Officer Tamer's assertion of qualified immunity depends on resolving a disputed fact question: whether Mathews' actions on being taken to the ground indicated obvious surrender. The Sixth Circuit has repeatedly held that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law. *See Morrison v. Bd. of Trustees of Green Tp.*, 583 F.3d 394, 406 (6th Cir. 2009) (concluding that officer was not entitled to qualified immunity on claim that officer struck arrestee in the head while she was incapacitated); *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (concluding that excessive force claim alleging officer struck plaintiff in the head when plaintiff had arms raised in "surrender" position could reach jury). If the jury concludes, as Mathews says, that Mathews had clearly surrendered before he was struck, Officer Tamer would not be entitled to qualified immunity.

## CONCLUSION

For the reasons explained above, Officer Tamer's Motion for Reconsideration is **DENIED**.

**SO ORDERED** this 8th day of November, 2022.
BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

5